Chase J. Potter
Texas State Bar No. 24088245
potter@imcplaw.com
Greg McAllister
Texas State Bar No. 24071191
greg@imcplaw.com
Joshua L. Shepherd
Texas State Bar No. 24058104
shepherd@imcplaw.com
Jesse A. Okiror
Texas State Bar No. 24065843
jesse@imcplaw.com
IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
(214) 432-6744 – Telephone

SPECIAL COUNSEL FOR
JOHN PATRICK LOWE, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**ANIMO BANCORP, INC.,**<br><br>**DEBTOR.** | §<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 24-50359-cag**<br><br>**Chapter 7** |
| **JOHN PATRICK LOWE, TRUSTEE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TOBY NEUGEBAUER AND MELISSA NEUGEBAUER,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary No. ___________** |

# TRUSTEE'S ORIGINAL COMPLAINT

John Patrick Lowe (the "Trustee" or "Plaintiff"), as the duly-appointed Chapter 7 Trustee for the estate (the "Estate") of Animo Bancorp, Inc. (the "Debtor" or "Bancorp" or the "Company"), the debtor in the above-styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), files this Original Complaint (this "Complaint") against Toby Neugebauer ("Toby") and Melissa Neugebauer ("Melissa," and collectively with Toby, the "Defendants" or the "Neugebauers"). In support thereof, the Trustee respectfully shows as follows:

## I.
## SUMMARY

1. This adversary proceeding arises from Defendants' improper taking of at least $7,000,000 from the Debtor at a time when the Company faced mounting unpaid creditor obligations with collection litigation imminent (and Defendants were aware of such creditor obligations and imminent litigation). The Trustee seeks to avoid and recover the transfers of (i) $3,500,000 to Toby, and (ii) $3,500,000 to Melissa (the "Transfers"), which were made on or about November 30, 2022, as fraudulent transfers pursuant to Sections 548 and 550 of the Bankruptcy Code[1] and Section 544 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

2. Moreover, as neither of the Transfers have been returned by Defendants, the Trustee seeks to disallow any Claim[2] that Defendants may have against the Debtor or the Estate. The Trustee does not waive, and hereby reserves, all of his rights (and the rights of the Debtor) to object to any such claim by Defendants, for any reason, including those grounds set forth in Section 502(a)-(j) of the Bankruptcy Code.

---

[1] 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

[2] As that term is defined in Section 101(5) of the Bankruptcy Code.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter and the relief requested herein under 28 U.S.C. §§ 157(b) and 1334. This matter presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter final orders for the relief requested herein. To the extent any matter in this adversary proceeding is not core, the Trustee consents to this Court's entry of final orders and judgment.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor's chapter 7 bankruptcy case is pending in this district and the causes of action asserted herein arise in, and are related to, that case.

5. The statutory and legal predicates for the relief sought herein are Sections 502, 544, 548, and 550 of the Bankruptcy Code, TEX. BUS. & COMM. CODE §§ 24.001, *et seq.* ("TUFTA"), and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## PARTIES

6. The Trustee is the duly appointed Chapter 7 Trustee of the Debtor and the Estate and files this Complaint in such capacity.

7. Defendants Toby Neugebauer and Melissa Neugebauer are individuals who may be served via first class mail, postage prepaid, to their place of residence at: 10777 Strait Lane, Dallas, TX 75229, pursuant to Rule 7004(b)(1) of the Bankruptcy Rules.

## IV.
## FACTUAL BACKGROUND

8. Bancorp filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 5, 2024 (the "Petition Date").

9. Bancorp was formed on or about May 27, 2021, as a Texas for-profit corporation. Bancorp was wholly owned by Toby and Melissa, each holding 50% ownership interests. Toby and Melissa, as directors of Bancorp, exercised authority and control over Bancorp's affairs, including executing corporate documents and regulatory filings on Bancorp's behalf.

10. With Purpose Inc., d/b/a GloriFi ("GloriFi"), was a Delaware corporation that sought to develop and launch an integrated financial services platform offering banking, insurance, and mortgage products through a mobile application and website. Although Bancorp was a separate legal entity from GloriFi, it operated within the broader GloriFi enterprise and shared common ownership and control through Toby and Melissa. Accordingly, the entities coordinated various strategic and operational initiatives.

***Bancorp Was Capitalized with $7 Million in Equity from Toby and Melissa***

11. Bancorp made efforts to acquire Ganado Bancshares, Inc., a bank holding company that owned Citizens State Bank in Ganado, Texas (collectively, "Ganado"). The Bank Holding Company Act of 1956 requires approval from the Federal Reserve Board (the "FRB") before a company is permitted to acquire ownership or control of a bank.[3] Accordingly, Bancorp could not acquire Ganado without obtaining FRB approval. Toby and Melissa, as directors of Bancorp, knew from the outset that securing and properly structuring Bancorp's capitalization was critical to obtaining FRB approval and, without adequate equity-driven funding in place, the FRB would not approve the application.

12. On or about September 29, 2021, Bancorp developed a capitalization structure comprised of $7,000,000 in an equity infusion provided by Toby and Melissa, and $28,000,000 in

[3] *See* 12 U.S.C. § 1842.

debt financing in the form of a note payable to the Neugebauer Family Trust ("NFT"). Under this structure, only the $7,000,000 equity infusion from Toby and Melissa would be immediately funded into Bancorp, while the $28,000,000 debt financing would *not* be transferred to Bancorp *unless and until* the FRB approved the application.




13. On or about October 5, 2021, Bancorp issued a capital call notice to Toby and Melissa to fund the proposed acquisition and merger with Ganado:

October 5, 2021

To: Toby R. Neugebauer
10777 Strait Lane
Dallas, Texas 75229

From: Animo Bancorp, Inc.

Re: Capital Call Notice

We are writing to notify you that the Company hereby requests a Capital Contribution in the amount of $7,000,000. Based on your Ownership Percentage of 50%, the total amount owed by you is $3,500,000.

Payment must be received on or prior to October 7, 2021. Your total payment set out above is payable by wire or bank transfer to the account listed below:

Name: Animo Bancorp, Inc.
Routing #: [redacted]
Account #: [redacted]

If you have any questions about this capital call, please contact Bryan Joiner at [redacted].

Sincerely,

Stephen Curry
Chief Executive Officer

October 5, 2021

To: Melissa Neugebauer
10777 Strait Lane
Dallas, Texas 75229

From: Animo Bancorp, Inc.

Re: Capital Call Notice

We are writing to notify you that the Company hereby requests a Capital Contribution in the amount of $7,000,000. Based on your Ownership Percentage of 50%, the total amount owed by you is $3,500,000.

Payment must be received on or prior to October 7, 2021. Your total payment set out above is payable by wire or bank transfer to the account listed below:

Name: Animo Bancorp, Inc.
Routing #: [redacted]
Account #: [redacted]

If you have any questions about this capital call, please contact Bryan Joiner at [redacted].

Sincerely,

Stephen Curry
Chief Executive Officer

14. On October 7, 2021, Toby and Melissa each contributed $3,500,000 to Bancorp for a total of $7,000,000. Importantly, this was an equity infusion (and was treated as such by Bancorp) – ***not a loan***. The Neugebauers' capital contribution was structured and recorded on Bancorp's books as equity. The Neugebauers' capital contribution was not accompanied by a promissory note, did not bear interest, did not include a maturity date, and did not create any contractual or legal obligation of repayment – because it was ***not a loan***. Throughout Bancorp's existence, the Neugebauers' $7,000,000 capital contribution was consistently reflected as equity on Bancorp's books and in internal Bancorp communications.

15. On or about November 5, 2021, as further evidence that the Neugebauers' $7 million capital contribution was equity (***not a loan***), Bancorp executives circulated its Citizens State Bank Acquisition Business Plan (the "Bank Acquisition Plan"). The Bank Acquisition Plan identified Toby and Melissa's contributions as ***equity*** capital.

16. Moreover, consistent with the Bank Acquisition Plan and the Company's financial records, Bancorp's application to the Board of Governors of the Federal Reserve System (the "Original Application") identified the Neugebauers' capital contribution of $7,000,000 as a "*direct investment* in Bancorp by Toby and Melissa Neugebauer" (*emphasis added*), once again reflecting the $7,000,000 ***equity*** infusion made by the Neugebauers into Bancorp. Toby and Melissa both certified that the Original Application was true, correct, and complete.

17. On or about December 24, 2021, after the Original Application was rejected by the FRB, Bancorp filed a new Application with the Board of Governors of the Federal Reserve System (the "Subsequent Application") again seeking approval to acquire Ganado. The Subsequent Application continued to classify the Neugebauers' $7,000,000 equity infusion into Bancorp as a "cash capital contribution":

> Bancorp does not have any direct operations, so on a parent company-only basis, its assets will consist solely of its investment in the common equity of the Bank and excess cash that is available for investment into the Bank. These assets are solely financed with common equity held by Toby and Melissa Neugebauer (the Founders).

Except from Section IA. Summary of the Proposed Transaction from the Subsequent Application filed on December 24, 2021

18. In sum, there can be no legitimate dispute that the Neugebauers' $7,000,000 capital contribution into Bancorp was equity – ***not a loan***.

***Prior to the Transfers, Bancorp Owed Significant Sums to Creditors***

19. Prior to the Petition Date, Bancorp occasionally devoted time or resources to projects associated with Animo Services, LLC ("ASL"), a subsidiary of GloriFi. ASL was involved with developing the consumer-facing "tech stack" intended to bring GloriFi's integrated financial services platform directly to users through a mobile application and website.

20. Working in conjunction with ASL, Bancorp retained third-party consultants and technology providers to build out the banking infrastructure. Among these vendors was the Capital Markets Company, LLC ("Capco"), a business and technology management consulting firm, purporting to operate primarily in financial services and energy sectors.

21. On August 25, 2021, Bancorp entered into an engagement agreement to retain Capco as a consulting partner. This engagement provided that Capco would submit monthly invoices for services rendered, which Bancorp was obligated to pay. Capco sent these monthly invoices to Bancorp from September 2021 through November 2022.

22. Beginning on or about June 9, 2022, Bancorp ceased paying the Capco invoices. Between June 9, 2022, and November 9, 2022, Capco submitted invoices to Bancorp totaling $396,904.38. None of these invoices were paid.

23. On or about November 14, 2022, Capco sent a letter to Bancorp demanding payment for the unpaid invoices (the "Capco Demand"):

> November 14 2022
>
> REQUEST FOR PAYMENT OF OUTSTANDING INVOICES PURSUANT TO CONTRACT BETWEEN ANIMO BANCORP INC. AND THE CAPITAL MARKETS COMPANY LLC ("CAPCO")
>
> Dear Sirs
>
> Animo Bancorp Inc. ("**Animo**" or "**you**") is party to a contract with Capco, namely Statement of Work Number #3 10 January 2022 (as amended by way of Change Order #4 dated 2 September 2022) (the "**Contract**"). Pursuant to the Contract, Capco was required to provide Services (as defined in the Contract) and Animo is/was required to pay fees for such Services. Capco has provided the Services, however the charges to be paid remain outstanding.
>
> We have corresponded with you on a number of occasions to seek payment of our outstanding fees. As at the date of this letter, these fees remain unpaid. We are therefore writing to provide formal notice to demand immediate payment in full of all outstanding fees due to Capco pursuant to the Contract. In total, $396,904.38 is due and payment to Capco.

The Neugebauers were aware of the Capco Demand. Bancorp failed to comply with the demand or make payment to Capco. Accordingly, Capco filed a lawsuit against Bancorp on December 16, 2022, in the 14th Judicial District Court of Dallas County, Texas (the "State Court"), Cause No. DC-22-17307. Following dispositive motions from both parties, the State Court rendered a final judgment for Capco in the amount of $396,904.38 for breach of contract, $72,097.50 in attorney fees, and $19,736.53 in pre-judgment interest against Bancorp.[4]

24. At the time of the Capco Demand, the Neugebauers knew Bancorp had no operating revenue, had not obtained FRB approval, and had no realistic prospect of generating income with which to satisfy its mounting creditor obligations. The Neugebauers further knew Bancorp's primary remaining asset was the cash in its bank account, and that – once those funds were used to pay creditors or subjected to collection proceedings – there would be nothing left for the Neugebauers. Faced with imminent creditor action, the Neugebauers decided to protect their own personal interests and raided Bancorp's coffers.

***Toby and Melissa Improperly Took $7 Million of Bancorp Funds to the Detriment of Bancorp's Creditors***

25. As discussed above, the $7,000,000 the Neugebauers invested in Bancorp pursuant to the October 5, 2021, capital call was structured, recorded, and treated as equity. Accordingly, as holders of equity interests in Bancorp, the Neugebauers had no contractual or other legal rights to repay themselves for their capital contributions. Put simply, the Neugebauers had no legal authority to withdraw or reclaim their contributed equity.

[4] *See* Capco Proof of Claim No. 6.

26. Undaunted, and with knowledge of Capco's impending litigation, the Neugebauers took matters into their own hands to ensure they would get their equity back and jump ahead of Bancorp's creditors (knowing full well that bankruptcy was likely on the horizon). On or about November 30, 2022, the Neugebauers directed, caused, and/or authorized Bancorp to transfer $3,500,000 to Toby and $3,500,000 to Melissa. The Transfers were not made pursuant to any formal dissolution or liquidation process, nor were they repayment of debt. Additionally, Toby and Melissa were insiders of the Debtor at the time of the Transfers based on their status as directors and as relatives[5] of one another.

27. The Transfers were not made pursuant to any contractual obligation, were not payment for services rendered, were not repayments of debt, and were not made in exchange for any asset or contemporaneous value provided to Bancorp. Accordingly, Bancorp received no value in exchange for the Transfers (certainly not reasonably equivalent value).

28. Immediately preceding the Transfers, Bancorp held $7,135,825.46 in cash. By directing the Transfers totaling $7,000,000 to themselves, the Neugebauers effectively drained Bancorp's bank account, leaving the Company without sufficient funds to continue business activities or satisfy its outstanding obligations (which was the intent of the Neugebauers). The magnitude of the resulting financial collapse is reflected in the Debtor's claims register in the underlying bankruptcy case, which shows unsecured claims exceeding $1.2 million, including the Capco judgment.

29. The Neugebauers were aware of the Capco Demand and other unpaid creditor obligations at the time of the Transfers and knew that removing substantially all of Bancorp's cash would prevent those funds from being used to pay creditors. The Transfers were made with the

[5] As that term is defined in Section 101(45) of the Bankruptcy Code.

intent to place Bancorp's remaining liquid assets beyond the reach of creditors and to protect the Neugebauers' self-interests.

## V.
## CLAIMS FOR RELIEF

### A. COUNT I: Avoidance of Transfer – Actual Fraudulent Transfer (11 U.S.C. § 548(a)(1)(A))

30. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

31. The Transfers represent the transfer of interests of the Debtor in property.

32. Toby and Melissa are the initial transferees of the Transfers. Toby and Melissa did not take the Transfers in good faith, did not take them for value, and did not take them without knowledge of their voidability.

33. The Transfers were made with the intent to hinder, delay, or defraud any entity to which the Debtor was indebted, including but not limited to Capco (an entity that was a creditor of the Debtor prior to the Transfers and remained a creditor of the Debtor on the Petition Date), or thereafter became indebted on or after the date such Transfers were made.

34. Numerous badges of fraud are present with respect to the Transfers. First, Toby and Melissa were insiders of the Debtors. Second, at the time of the Transfers, Defendants knew Bancorp had no operating revenue, had not obtained FRB approval, and had no prospect of generating income with which to satisfy its mounting creditor obligations. Third, at the time of the Transfers, Defendants knew Bancorp's primary remaining asset was the cash in its bank account, and that once those funds were used to pay creditors or subjected to collection proceedings (as the funds should have been used), the funds would no longer be available to Defendants. Fourth, immediately preceding the Transfers, Bancorp held $7,135,825.46 in cash. The $7,000,000 in Transfers to Defendants depleted Bancorp's bank account and left Bancorp without sufficient

funds to satisfy its outstanding obligations, including but not limited to the obligations listed in the Capco Demand. Fifth, Defendants provided no specific services, work, or other value to the Debtor that could possibly support the Transfers, and the Transfers match dollar for dollar the equity infusion made by Defendants into Bancorp.

35. The Trustee therefore pleads that the Transfers were actual fraudulent transfers because (for the reasons set forth above) the Debtor made the Transfers with the actual intent to hinder, delay, or defraud creditors. As such, the Transfers are avoidable under Section 548(a)(1)(A) of the Bankruptcy Code.

### B. COUNT II: Avoidance of Transfer – Actual Fraudulent Transfer (TEX. BUS. & COM. CODE § 24.005(a)(1))

36. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

37. The Trustee also pleads that the Transfers were actual fraudulent transfers under TUFTA § 24.005(a)(1).

38. At the time of the Transfers, and as reflected on the Debtor's financial statements, the Debtor had multiple unsecured creditors who were owed money (including, but not limited to, Capco). Unsurprisingly, some of these creditors were still owed by the Debtor on the Petition Date (*e.g.*, Capco), as reflected in part by the Debtor's claims register in the underlying bankruptcy case. Accordingly, pursuant to Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, the Transfers under TUFTA.

39. For the same reasons the Transfers are actual fraudulent transfers under Section 548(a)(1)(A) of the Bankruptcy Code, the Transfers are also actual fraudulent transfers under Section 24.005(a)(1) of TUFTA. Accordingly, pursuant to Section 544 of the Bankruptcy Code, the Trustee is entitled to avoid the Transfers. Moreover, pursuant to Section 24.013 of TUFTA,

the Trustee is entitled to his reasonable costs and attorney's fees in avoiding and recovering the Transfers.

**C. COUNT III: Avoidance of Transfers as Constructively Fraudulent Transfers Under the Bankruptcy Code (11 U.S.C. § 548(a)(1)(B))**

40. The Trustee hereby incorporates all foregoing and ensuing facts and allegations as if set forth herein.

41. As set forth above, on or about November 30, 2022, the Debtor transferred $7,000,000 to the Neugebauers, $3,500,000 to Toby and $3,500,000 to Melissa, without receiving any value in exchange (much less reasonably equivalent value). The Transfers totaled the exact amount of the Neugebauers' prior $7,000,000 *equity* contribution to Bancorp. Neither Toby nor Melissa provided specific services, work, or any other value to the Debtor that entitled the Defendants to the Transfers. Meanwhile, at the time the Transfers were made, the Debtor was incurring debts that, following the depletion of substantially all of its liquid assets as a result of the Transfers, it was unable to pay as they became due. The Debtor's claims register in the underlying bankruptcy case, for example, reflects unsecured claims against the Debtor exceeding $1.2 million as of the Petition Date, including the Capco judgment.

42. Prior to the Petition Date, the Debtor made each of the Transfers of an interest of the Debtor's property (cash), to or for the benefit of the Neugebauers through payments totaling not less than $7,000,000.

43. The Trustee therefore pleads that the Transfers were constructively fraudulent transfers. As such, the Transfers are avoidable under 11 U.S.C. § 548(a)(1)(B) because (for the reasons set forth above) the Debtor received no value (much less reasonably equivalent value) in exchange for the Transfers, and the Debtor (i) became insolvent, (ii) was engaged in business for which its remaining property constituted unreasonably small capital, or (iii) intended to incur, or

believed the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

**D. COUNT IV: Avoidance of Transfers as Constructively Fraudulent Transfers Under TUFTA (TEX. BUS. & COMM. CODE § 24.005(a)(2))**

44. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

45. In the alternative to the foregoing, the Trustee also pleads the Transfers were fraudulent under TUFTA.

46. As set forth above, on or about November 30, 2022, the Debtor transferred $7,000,000 to the Neugebauers, $3,500,000 to Toby and $3,500,000 to Melissa, without receiving any value in exchange. The Transfers totaled the exact amount of the Neugebauers' prior $7,000,000 *equity* contribution to Bancorp. Neither Toby nor Melissa provided specific services, work, or any other value to the Debtor that entitled the Defendants to the Transfers. Meanwhile, at the time the Transfers were made, the Debtor was incurring debts that, following the depletion of substantially all of its liquid assets as a result of the Transfers, it was unable to pay as they became due. The Debtor's claims register in the underlying bankruptcy case, for example, reflects unsecured claims against the Debtor exceeding $1.2 million as of the Petition Date, including the Capco judgment.

47. Pursuant to Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, a pre-petition transfer by the Debtor that an unsecured creditor could avoid.

48. Prior to the Petition Date, the Debtor made each of the Transfers of an interest of the Debtor's property (cash), to or for the benefit of the Neugebauers through payments totaling not less than $7,000,000.

49. The Transfers were fraudulent transfers under TUFTA because (for the reasons set forth above) the Debtor received no value (much less reasonably equivalent value) in exchange for the Transfers, and the Debtor (i) was engaged in business for which its remaining property constituted unreasonably small capital, or (ii) intended to incur, or believed the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

50. Accordingly, pursuant to Section 544 of the Bankruptcy Code, the Trustee is entitled to avoid the Transfers. Moreover, pursuant to Section 24.013 of TUFTA, the Trustee is entitled to his reasonable costs and attorney's fees in avoiding and recovering the Transfers.

### E. COUNT V: Avoidance of Transfers as Constructively Fraudulent Transfers Under TUFTA (TEX. BUS. & COMM. CODE § 24.006(a))

51. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

52. In the alternative, the Trustee also pleads the Transfers were constructively fraudulent transfers under Section 24.006(a) of TUFTA.

53. On or about November 30, 2022, the Debtor transferred $7,000,000 to the Neugebauers, $3,500,000 to Toby and $3,500,000 to Melissa.

54. Pursuant to Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of one or more unsecured creditors whose claims arose prior to the Transfers. As alleged herein, at the time of the Transfers, multiple unsecured creditors had claims against the Debtor, including but not limited to Capco.

55. The Transfers were fraudulent transfers under TUFTA because (for the reasons set forth above) the Debtor received no value (much less reasonably equivalent value) in exchange for the Transfers. The Transfers totaled the exact amount of the Neugebauers' prior $7,000,000 *equity* contribution to Bancorp. For the reasons previously stated, neither Toby nor Melissa provided any

value to the Debtor that would somehow entitle them to the Transfers. Meanwhile, after the Transfers were made, only $135,825.46 of cash remained with the Debtor, meaning it was either insolvent, became insolvent as a result of the Transfers, or was unable to satisfy its obligations as a result of the Transfers. The Debtor's remaining cash following the Transfers was insufficient for the Debtor to continue business activities or satisfy its outstanding obligations.

56. Accordingly, pursuant to Section 544 of the Bankruptcy Code, the Trustee is entitled to avoid the Transfers. Moreover, pursuant to Section 24.013 of TUFTA, the Trustee is entitled to his reasonable costs and attorney's fees in avoiding and recovering the Transfers.

**F. COUNT VI: Recovery of Voidable Transfer (11 U.S.C. § 550)**

57. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

58. The Debtor transferred $3,500,000 to Defendant Toby Neugebauer on or about November 30, 2022.

59. The Debtor transferred $3,500,000 to Defendant Melissa Neugebauer on or about November 30, 2022.

60. Defendants were the initial transferees of the Transfers, or the immediate or mediate transferees of such initial transferees, or the Transfers were made for Defendants' benefit.

61. Pursuant to Section 550 of the Bankruptcy Code, the Trustee is entitled to recover the Transfers, in the total amount of $7,000,000, and hereby seeks a money judgment against Defendants in at least that amount.

## G. COUNT VII: Disallowance of Claim (11 U.S.C. § 502)

62. The Trustee hereby incorporates all the foregoing and ensuing facts and allegations as if set forth herein.

63. The Debtor transferred $3,500,000 to Defendant Toby Neugebauer on or about November 30, 2022.

64. The Debtor transferred $3,500,000 to Defendant Melissa Neugebauer on or about November 30, 2022.

65. Defendants are the transferees of the Transfers, which are avoidable as stated herein. As such, the Transfers are recoverable pursuant to Section 550 of the Bankruptcy Code.

66. Defendants have not paid back any portion of the Transfers.

67. Accordingly, pursuant to Section 502(d) of the Bankruptcy Code, any Claim that Defendants and/or their assignees may have against the Debtor or Estate must be disallowed.

68. If Defendants fail to pay the Trustee an amount equal to the aggregate amount of the Transfers, the Trustee hereby requests that the Bankruptcy Court disallow all Claims of Defendants.

## H. COUNT VIII: Pre-Judgment and Post-Judgment Interest, Attorney's Fees, and Expenses

69. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

70. The Trustee is also entitled to recover (i) pre-judgment interest at the federal post judgment rate from the date of the Transfers until the date of the judgment, and (ii) post-judgment interest from the date judgment is entered against Defendants until such judgment is collected in full.

71. The Trustee is also entitled to recover an award of reasonable costs and attorney's fees in avoiding and recovering the Transfers pursuant to Section 24.013 of TUFTA.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court render judgment for the Trustee and against Defendants, providing for:

(i) avoidance of the Transfers under Section 548 of the Bankruptcy Code and TUFTA as fraudulent transfers for the reasons more fully stated herein;

(ii) recovery of the Transfers by way of money judgment against Defendants;

(iii) an award of reasonable attorney's fees and costs;

(iv) pre-judgment interest and post-judgment interest at the highest rate allowed by law;

(v) disallowance of any Claim Defendants and/or their assignees may have against the Debtor or the Estate; and

(vi) such other and further relief, at law or in equity, to which the Trustee may be entitled.

*[Attorney Signature on Following Page]*

Respectfully submitted,

*/s/ Chase J. Potter*

**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com
**GREG MCALLISTER**
Texas State Bar No. 24071191
E-Mail: greg@imcplaw.com
**JOSHUA L. SHEPHERD**
Texas Bar No. 24058104
E-Mail: shepherd@imcplaw.com
**JESSE A. OKIROR**
Texas Bar No. 24065843
E-Mail: jesse@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone: (214) 432-1536

**SPECIAL COUNSEL FOR THE TRUSTEE**